

**SO ORDERED.**
**SIGNED this 15th day of June, 2020**

_____
Suzanne H. Bauknight
UNITED STATES BANKRUPTCY JUDGE

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

ROBERT EDWARD WALLEN
MISTY DAWN WALLEN

Case No. 3:18-bk-30667-SHB
Chapter 7

Debtors

### MEMORANDUM AND ORDER ON MOTION FOR CONTEMPT
### FOR VIOLATIONS OF THE AUTOMATIC STAY
### AND/OR DISCHARGE INJUNCTION
### AGAINST MORRISTOWN TIRE AND PERFORMANCE CENTER, LLC

This contested matter is before the Court on the Motion for Contempt for Violations of the Automatic Stay and/or Discharge Injunction Against Morristown Tire and Performance Center, LLC ("Motion for Contempt") filed by Debtors on November 25, 2019 [Doc. 38], asking the Court to hold Morristown Tire and Performance Center, LLC ("Morristown Tire") in contempt for willfully violating the automatic stay provisions of 11 U.S.C. § 362(a) and/or the discharge injunction of 11 U.S.C. § 524(a) and to award actual damages, including attorneys' fees, and punitive damages pursuant to 11 U.S.C. §§ 105(a) and 362(k). When no representative of Morristown Tire appeared at the hearing on the Motion for Contempt held on December 19,

2019, the Court entered an Order that same date granting the Motion for Contempt "for attempting to collect a debt against Debtors in willful violation of the automatic stay and with actual knowledge of Debtors' bankruptcy case that was filed on March 9, 2019, and in violation of the discharge injunction following Debtors' discharge entered on June 26, 2019," and scheduling an evidentiary hearing on damages ("Contempt Order"). [Doc. 40.]

The evidentiary hearing on damages was held February 20, 2020, after which the Court directed Debtors' counsel to file an affidavit of attorneys' fees and expenses and the parties to file post-hearing briefs that addressed how the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), applies in this contested matter. Debtors filed their Supplemental Brief and the Affidavit of John P. Newton ("Newton Affidavit") on March 20, 2020 [Docs. 45, 45-1], and Morristown Tire filed its responsive brief on April 9, 2020 [Doc. 46]. Thus, the matter is ripe for adjudication, and the record before the Court consists of four exhibits admitted into evidence; the testimony of Debtor Misty Wallen and Morristown Tire owners, Tillman "Tim" Goins and Karen Goins; the Newton Affidavit; and pursuant to Rule 201 of the Federal Rules of Evidence, all documents of record in Debtors' bankruptcy case (of which the Court takes judicial notice).

## I. FACTS

Debtors commenced their Chapter 7 bankruptcy case on March 9, 2018. [*See* Doc. 1.] They listed Morristown Tire, which is a limited liability company owned by Mr. and Mrs. Goins, as a creditor that held an unsecured nonpriority debt in the amount of $787.00 that was incurred in 2010 [Docs. 1 at 38; 38-2]. The debt owed to Morristown Tire was discharged by the Order of

Discharge ("Discharge Order") entered on June 26, 2018,[1] and the case was closed on August 2, 2018. [*See* Docs. 28, 31.] The Court reopened the case on October 24, 2019, on Debtors' request so that they could file the Motion for Contempt. [Doc. 36].

Debtors argue that Morristown Tire's posting of a "Dead Beat List" that included Debtor[2] Misty Wallen's name violated the automatic stay and the discharge injunction. [Doc. 38-5; Tr. Ex. 2.] The parties do not dispute that the "Dead Beat List" was publicly posted near Morristown Tire's service desk from some time preceding the petition date of March 9, 2018, until it was replaced by a lengthier list that was posted sometime between December 18, 2018, and January 9, 2020 [*see* Tr. Ex. 1], and subsequently removed altogether on the advice of counsel before the evidentiary hearing on the Motion for Contempt.[3]

Debtor testified that she knew about the "Dead Beat List" before filing for bankruptcy protection, and she called Morristown Tire postpetition to advise about her filing and to request that the list be removed. Debtor also testified that she called Morristown Tire three times in May 2019 after her husband saw that the list was still posted, and she had received calls from and had been questioned by her pastor, other people from church, friends, and someone from work about being on the "Dead Beat List." The parties agree that Debtor did not speak with either Mr. or

---

[1] The Bankruptcy Noticing Center ("BNC") receipts for the Notice of Chapter 7 Bankruptcy Case and the Order of Discharge reflect that both documents were mailed to Morristown Tire at 720 E. Morris Blvd., Morristown, TN 37813-2444 [Docs. 14, 29], and the docket reflects that no mail addressed to Morristown Tire was returned.

[2] Because only Misty Wallen's name appears on the "Dead Beat List" and the contempt action applies directly to her, in this Memorandum and Order, all references to "Debtor" are Debtor Misty Wallen; references to "Debtors" include both Misty Wallen and Robert Wallen.

[3] Although Mr. Goins testified that the list had been posted for between twelve and thirteen years and that a name had been removed only once (when that individual had passed away), the parties do not dispute that Debtor's obligation was incurred in 2010. Debtor testified that the original list marked as Trial Exhibit 2 was still posted when her husband went to Morristown Tire in December 2018, and that when he went into the business after the initial hearing on the Motion for Contempt, the longer list, which was marked as Trial Exhibit 1, was posted instead. Counsel for Morristown Tire advised the Court during argument at the evidentiary hearing that he had directed Mr. Goins to remove the list.

Mrs. Goins during any of the calls she made to Morristown Tire.

Although the Certificate of Service for the Motion for Contempt reflects that it was served on Morristown Tire at 720 E. Morris Boulevard, Morristown, Tennessee, Mr. and Mrs. Goins each testified that they did not receive the Motion for Contempt, although they did receive the Contempt Order entered on December 19, 2019, which was mailed by BNC to the same address.  Mrs. Goins described the process for how Morristown Tire handles its mail and stated that the same procedures were in place during the entire time in question:  Michelle McKinney sorted all mail, pulled payments, and prepared checks for payment of bills, which she then gave to Mrs. Goins for her review and signature on checks.  Neither Mr. nor Mrs. Goins personally went through the mail themselves.

When questioned about the intended purpose for the "Dead Beat List," Mr. Goins testified that he was not attempting to collect on debts; instead, the list was posted to remind his staff that they were not allowed to extend credit to any of the individuals who were included on the list.  However, when he was questioned about the company's practices concerning credit, Mr. Goins testified that it was not the ordinary practice for Morristown Tire to extend credit to individuals, and employees were allowed to do so only under extraordinary circumstances.  Additionally, as argued by Debtor at the evidentiary hearing and averred by Mr. Newton in his Affidavit, other bankruptcy debtors were included on the Deadbeat List, including one former employee of Morristown Tire, and at least two of those debtors had included Morristown Tire in their statements and schedules.[4]  [*See* Doc. 45-1.]

---

[4] Of the ten bankruptcy cases listed as part of Mr. Newton's affidavit, the Court confirmed that, in addition to Debtor herein, Morristown Tire was listed as a creditor in Case No. 12-50628 (which was incorrectly typed as 30628 in the Affidavit) and Case No. 10-51069.  Additionally, Morristown Tire was the employer who received an order for wage deduction in Case No. 16-50837.

## II.  CONCLUSIONS OF LAW

Debtors ask the Court to hold Morristown Tire in contempt for willfully violating the automatic stay provisions of 11 U.S.C. § 362(a) and/or the discharge injunction provided by 11 U.S.C. § 524(a).  Because the Bankruptcy Code provides a private right of action for automatic stay violations but not for violations of the discharge injunction, the standards differ, and separate analysis is required for each violation. *See In re Caldwell*, No. 18-32346-jda, 2019 WL 5616908 at *3 n.3, (Bankr. E.D. Mich. Oct. 30, 2019) (noting that the Supreme Court in *Taggert v. Lorenzen*, 139 S. Ct. 1795 (2019), "explicitly left open the question whether its newly announced standard [for civil contempt] applies to violations of the automatic stay" and citing "at least two courts [that] have held that *Taggert* did not alter the applicable standard to be used in considering violations of the automatic stay" (citing *Calif. Coast Univ. v. Aleckna*, No. 3:16-cv-00158, 2019 WL 4072405 (M.D. Pa. Aug. 28, 2019); *In re Spiech Farms, LLC*, 603 B.R. 395 (Bankr. W.D. Mich. 2019);)).

### A.  Violations of the Automatic Stay

Under 11 U.S.C. § 362(a)(3) and (a)(6), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[] and/or any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  In other words, creditors are enjoined from sending letters or engaging in informal contact with debtors, including telephone calls. *See Colo. E. Bank & Tr. v. McCarthy (In re McCarthy)*, 421 B.R. 550, 565 (Bankr. D. Colo. 2009).  Creditors likewise may not post notices related to a debt or address letters to a debtor's in-laws to collect a debt. *See Torres Lopez v. Consejo De Titulares Del Condominio Carolina Court Apartments. (In re Torres*

*Lopez)*, No. 01-04801 GAC, Adv. No. 03-00093, 2006 WL 3898307, at *3-4 (Bankr. D.P.R. May 15, 2006) (summarizing cases concerning posted notices and stating that posting a list of past-due apartment dwellers with the amount owed and the notation "Chapter 13" "clearly" would violate the automatic stay).

If a willful stay violation occurs – i.e., when "the creditor knew of the stay and violated the stay by an intentional act," *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999) – the injured party "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

> A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability.[5] There is nothing more to prove except damages.

*Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013) (alteration in original) (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see also In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001), *cited with approval in In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009).

"[W]illfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (finding that the creditor bank did not have proper

---

[5] In *In re Spiech Farms, LLC*, 603 B.R. 395, 408 n.22 (Bankr. W.D. Mich. 2019), the bankruptcy court noted that it "[did] not read *Taggart* to change the Sixth Circuit's standard for determining whether a creditor can be held in contempt for violating the automatic stay." This Court chooses not to weigh in on the debate concerning *Taggart* and § 362 because the decision here is not dependent on application of a strict-liability standard. Instead, as explained herein, the Court finds that Morristown Tire's failure to remove Debtor's name from the publicly posted Deadbeat List was unreasonable under the circumstances such that the heightened *Taggert* standard has been met.

procedures in place), *cited with approval in In re Stringer*, 586 B.R. 435, 443 & n.6 (Bankr. S.D. Ohio 2018) (noting that "the cases are legion" that find that "[n]o specific intent to violate the stay or malice is required"). Further, acts that "by their nature constitute efforts to collect . . . debts . . . are not excused simply because they were mistakenly pursued." *In re Jones*, 367 B.R. 564, 569 (Bankr. E.D. Va. 2007). As one bankruptcy court held, even if a statement was mailed by "mistake," the creditor "clearly intended" to take the action it took so that it violated the automatic stay. *In re Tucker*, 526 B.R. 616, 620-21 (Bankr. W.D. Va. 2015) (finding, however, that damages did not flow from the technical violation because immediately after the creditor "became aware of the error, 'the mail code was corrected to prevent any further mortgage billing statement or other collection notices from being mailed to the Debtor'").

Thus, "[a] creditor's good faith belief that its intentional actions did not violate the automatic stay is not a defense to a § 362(k) action." *Springer v. RNBJ RTO LLC (In re Springer)*, Adv. No. 16-3007, 2017 WL 3575859, at *3 (Bankr. W.D. Ky. Aug. 16, 2017) (citing *In re Sharon*, 234 B.R. at 688). A creditor is obligated to "restore the status quo and undo its previous actions which violated the stay," *In re Banks*, 253 B.R. 25, 31-32 (Bankr. E.D. Mich. 2000) (citations omitted), and "[f]ailure to take affirmative action to undo an innocent violation of the automatic stay . . . may constitute a willful violation." *Mitchell Constr. Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995); *see also Henson v. Bank of Am., N.A. (In re Henson)*, 477 B.R. 786, 788 (Bankr. D. Colo. 2012) ("[A] creditor who has taken an action that has set a course of action in motion may be required to take affirmative steps to stop the proceeding.").

Mr. Goins argued that he did not post the Deadbeat List in an attempt to collect a debt from any of the persons listed but that his purpose in posting it was to inform his employees of

certain persons who could not be granted credit. Setting aside the seeming contradiction of such an assertion by Mr. Goins's testimony that Morristown Tire "very rarely" extended credit to customers, although the Court acknowledges that Morristown Tire did not send Debtor any sort of letter or communication to collect the debt, it finds that the act of posting the "Deadbeat List" was an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Had the Deadbeat List been posted discretely behind the counter for only employees to see instead of its posting in full view of customers who stood at the counter to pay (and, notably, *behind* the employee who stood at the counter to interact with customers), the determination might be different.

Based on the evidence, the Court concludes that the purpose for posting the Deadbeat List was to embarrass and coerce the named individuals into paying their past-due accounts. Moreover, once Morristown Tire was apprised of Debtor's bankruptcy through receipt of the bankruptcy notice as well as phone calls that Debtor made in May 2019 to advise of the filing and to request that she be removed from the Deadbeat List, Morristown Tire was required to ensure that it was not taking any action that reasonably could be perceived as an attempt to collect a debt. Although neither Mr. nor Mrs. Goins may have seen the bankruptcy notice or talked to Debtor on the telephone, Morristown Tire is bound by the actions of its employees, to whom have been entrusted sole discretion concerning what mail is passed along to Mrs. Goins. Posting the Deadbeat List was an intentional act that willfully violated the automatic stay.

### B. Violations of the Discharge Injunction

The bankruptcy discharge does not erase the debt owed; instead, it relieves the debtor of any personal liability for the debt through imposition of the discharge injunction. *See Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005). After entry of discharge,

the automatic stay of collection activity is replaced by the discharge injunction to protect debtors from being pursued for payment of discharged debts. *See In re Goodfellow*, 298 B.R. 358, 361 (Bankr. N.D. Iowa 2003). Specifically, § 524(a) prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived," 11 U.S.C. § 524(a).

Whether an act is prohibited "is largely a matter of the court knowing it when it smells it" and includes coercive or harassing actions. *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) (citing cases that found underhanded subterfuge in violation of the discharge injunction by a doctor's notification that medical services would be denied unless a discharged debt was "voluntarily" paid and by a creditor's broken promise to ship new merchandise if the debtor paid a discharged debt). "[I]f the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt, a violation of the discharge injunction [can] be established." *In re Irby*, 337 B.R. at 296. Similarly, "[e]vidence of harassment might be another way of demonstrating that a given act is effective as an act to collect a debt." *Mahoney v. Washington Mut., Inc. (In re Mahoney)*, 368 B.R. 579, 588 (Bankr. W.D. Tex. 2007).

In *In re Andrus*, 189 B.R. 413 (N.D. Ill. 1995), a creditor appealed the bankruptcy court's finding that his posting of large signs near the debtor's home violated the discharge injunction. The signs read: "GENE ANDRUS, WHERE'S MY MONEY?" and "GENE ANDRUS WENT BANKRUPTCY! HE DIDN'T PAY HIS BILLS. HE IS A DEADBEAT! THIS IS A PUBLIC

SERVICE ANNOUNCEMENT." *Id.* at 414.[6] In addition to the signs, the creditor left "a harassing and vulgar" message on the debtor's answering machine and threated to ruin the debtor's reputation in the community unless he paid the discharged debt, and he shouted threats to the debtor's spouse from his yard. *Id.* at 415.

Here, although Morristown Tire's actions were not as egregious as the actions in *Andrus*, the Court has already determined that the creditor posted the Deadbeat List for the purpose of embarrassing or coercing those on it, including Debtor, to repay the debts in violation of the automatic stay. Thus, the Deadbeat List constitutes a violation of the discharge injunction as well.

### C. Contempt Generally Under *Taggert v. Lorenzen*

Long before the Supreme Court's decision in *Taggert*, the Sixth Circuit determined that there is no private right of action to pursue damages for violating the discharge injunction afforded by 11 U.S.C. § 524(a) and that the appropriate avenue to do so was through the bankruptcy court's contempt powers. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (2000). To prevail in a contempt action, the debtor held the burden of proving "by clear and convincing evidence that (1) the creditor violated the discharge injunction and (2) the creditor did so with actual knowledge of the injunction." *In re Joseph*, 584 B.R. 696, 702 (Bankr. E.D. Ky. 2018); *see also In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009) ("[W]hen determining whether to hold a creditor in contempt for violating the discharge injunction, courts tend to utilize the standard employed when determining whether or not a creditor willfully violated the automatic stay; i.e., whether the creditor deliberately acted with knowledge of the

---

[6] The first sign was removed after the debtors filed a motion for contempt that was resolved by an agreed order enjoining "the commencement or continuation of any action, the employment of any process, or an act, to collect, recover or offset" the discharged debt. *Id.* at 415.

bankruptcy case."). That standard was utilized by this Court when it entered the Contempt Order in this case, finding that Morristown Tire, by default, was in contempt "for attempting to collect a debt against Debtors in willful violation of the automatic stay and with actual knowledge of Debtors' bankruptcy case that was filed on March 9, 2019, and in violation of the discharge injunction following Debtors' discharge entered on June 26, 2019." [Doc. 40.]

In *Taggert*, the Supreme Court examined the extent to which a bankruptcy court is authorized to impose contempt damages against creditors for violations of the discharge injunction provided by 11 U.S.C. § 524(a) and set the following standard by which bankruptcy courts may find creditors who violate the discharge injunction in civil contempt:

> A court may hold a creditor in civil contempt for violating a discharge order where there is not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order . . . , [which] standard strikes the "careful balance between the interests of creditors and debtors" that the Bankruptcy Code often seeks to achieve.

139 S. Ct. at 1804 (quoting *Clark v. Rameker*, 573 U.S. 122, 129 (2014)). As summarized by the Sixth Circuit Bankruptcy Appellate Panel,

> [T]he United States Supreme Court rejected a . . . willfulness standard and clarified the standard that applies when a violation of the discharge injunction is alleged. The Court held that a creditor may only be held in civil contempt for violation of the discharge order "if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." 139 S. Ct. at 1799. "[C]ivil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id*. In other words, there is no fair ground of doubt when the creditor violates a discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id*. at 1802. A "creditor's good faith belief" that the discharge injunction does not apply to the creditor's act that violated the discharge injunction does not by itself preclude a civil contempt sanction. *Id*. Conversely, it is not sufficient to hold a creditor in civil contempt by finding that "the creditor was aware of the discharge order and intended the actions that violated the order." *Id*. at 1803.

*Orlandi v. Leavitt Family L.P. (In re Orlandi)*, 612 B.R. 372, 382 (B.A.P. 6th Cir. 2020).

Accordingly, under the *Taggert* standard, a court may find a party in civil contempt for

violating the discharge injunction if the following elements have been proved:

> (1) the party violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct — i.e., no objectively reasonable basis for concluding that the party's conduct might be lawful. And at least as to the first two of these elements, the moving party must prove them by clear and convincing evidence.

*In re City of Detroit, Mich.*, 614 B.R. 255, 265 (Bankr. E.D. Mich. 2020).

Under this heightened standard for civil contempt for discharge injunction violations, here, the Court must examine whether Debtor proved – by clear and convincing evidence – that Morristown Tire violated a definite and specific order of the court requiring it to refrain from particular acts and that it did so with knowledge of the order. If the answer to both questions is yes, then Debtor must also prove that the order left no objectively reasonable basis for concluding that Morristown Tire's actions were permissible in light of the order.

The Court finds that the Discharge Order [Doc. 28] satisfies the first requirement and that Morristown Tire's receipt of the Discharge Order [*see* Doc. 29] satisfies the second, leaving only the third element at issue. That is, is there any objectively reasonable basis for Morristown Tire to conclude that its posting of the Deadbeat List would be permissible as to a discharged debt?

As noted, the Court finds disingenuous Mr. Goins's testimony that he posted the Deadbeat List merely to alert employees of persons to whom they could not extend credit (rather than for the purpose to harass or embarrass the listed individuals to coerce payment). Although bankruptcy law may be complex, "ignorance of the law is no excuse." *Shevlin-Carpenter Co. v. Minnesota*, 30 S. Ct. 663, 666 (1910). As the owners of Morristown Tire, a company that routinely deals with the public, Mr. and Mrs. Goins are charged with knowing how to proceed

when customers file for bankruptcy protection,[7] and it is objectively unreasonable to conclude that continuing to post a list of persons who had not paid debt obligations – including persons who had received a bankruptcy discharge of those debts – would be a permissible action under the Discharge Order.

### III. ACTUAL DAMAGES

Morristown Tire willfully violated the automatic stay by posting the Deadbeat List with Debtor's name on it during the pendency of Debtor's bankruptcy case and violated the discharge injunction by continuing the post a Deadbeat List with Debtor's name on it post-discharge. As a result of the automatic-stay violations, Debtor unquestionably is entitled to actual damages, including costs and attorneys' fees, pursuant to 11 U.S.C. §362(k)(1).

At the evidentiary hearing, Debtor testified that she missed work to attend court, resulting in lost hourly wages of $15.37 for eight hours ($122.96); that she incurred mileage costs totaling $55.20[8] for travel to and from court (a forty-eight mile, one-way trip); and that she paid $10.00 to park on the day of the damages hearing. Debtor also testified that she incurred attorneys' fees and expenses for filing and prosecuting the Motion for Contempt, and in compliance with the Court's directives, Debtor's counsel filed an affidavit reflecting that his firm incurred fees and expenses in the amount of $4,155.45 to prosecute Debtor's Motion for Contempt. [*See* Doc. 45-2.]

On review of the time records attached to Mr. Newton's Affidavit, the Court has determined that the following services totaling $187.50 (.8 of an hour ($160.00) for Mr. Kevin Newton at his $200.00 hourly rate and .1 of an hour ($27.50) for Mr. John Newton at his $275.00

---

[7] Moreover, Mrs. Goins testified that she and Mr. Goins at some point in the past had unsuccessfully pursued a claim in bankruptcy so that after that experience, they would write off debt when they received bankruptcy notices.

[8] The total mileage expense is computed by multiplying 96 miles by the standard mileage rate of 57.5 cents per mile.

hourly rate) are clerical and are, thus, not compensable at the attorney rate:

- 09/10/19    KSN    Review of retainer agreement for motion for contempt    .1
- 11/25/19    KSN    Reviewed email form paralegal to UST about filed Motion for Contempt    .1
- 01/07/20    KSN    Review file with staff for documents necessary for damages hearing    .1
- 01/10/20    KSN    Reviewed file status and case preparation with staff/ paralegals / JPN about hearing with Judge on 1/09 date to be reset and continued due to retention of counsel by Morristown Tire    .2
- 01/10/20    KSN    Direct that attorney Kyle Ray contact client for appointment to discuss case contempt proof    .1
- 02/18/20    KSN    Discussion with staff and JPN about client's case    .2
- 02/21/20    JPN    Review notes from court hearing for items to complete and set deadlines.    .1

Likewise, fees will not be awarded at an attorney rate for the following services that are routinely performed by paraprofessionals and will be reduced from $980.00 to $465.50 (a deduction of $514.50) to allow for compensation at the $95.00 maximum hourly rate for paraprofessional services:

- 02/12/20    KSN    Review all file documents and assemble all file notes and records to organize case for damage hearing. Give to staff to complete organization.    .4
- 02/18/20    KSN    Review of file / creation of hearing notebook and related history notes for hearing / discussion with attorneys on proof for damage hearing.    4.5

Finally, the Court is also reducing the requested fees by an additional $260.00 ($40.00 for .2 of an hour for Mr. Kevin Newton and $220.00 for .8 of an hour for Mr. John Newton) for the following services because Debtor's counsel did not address the *Taggert* issue as directed by the Court in the post-hearing brief:

- 02/21/20    KSN    Review of case with JPN to discuss supplemental brief and required research for cases to supply on punitive damages    .2
- 03/20/20    JPN    Revise and approve for filing supplemental brief and Affidavit on prior bankruptcy filings on Dead Beat List    .8

Accordingly, after reducing the fees by $962.00 as outlined, the Court awards attorneys' fees in the amount of $3,321.75 and expenses of $9.20 for a total of $3,330.95.[9]

### IV.  PUNITIVE DAMAGES

Section § 362(k)(1) authorizes the Court to award punitive damages for willful stay violations in appropriate cases.  The following non-exhaustive list of factors are often considered when determining the appropriateness and amount of punitive damages: "(1) the nature of the creditor's conduct; (2) the nature and extent of harm to the debtor; (3) the creditor's ability to pay damages; (4) the level of sophistication of the creditor; (5) the creditor's motives; and (6) any provocation by the debtor." *See Henderson v. Auto Barn Atlanta, Inc. (In re Henderson)*, Bankr. No. 09-50596, Adv. No. 09-5114, 2011 WL 1838777, at *9 (Bankr. E.D. Ky. May 13, 2011).  Courts also "consider 'the degree of reprehensibility' of the conduct [as well as] 'the disparity between the harm or potential harm suffered . . . and [the] punitive damages award.'" *In re Johnson*, 580 B.R. 766, 801 (Bankr. S.D. Ohio 2018) (quoting *Bavelis v. Doukas (In re Bavelis)*, 571 B.R. 278, 326 (Bankr. S.D. Ohio 2017) (second alteration in original)).

Notwithstanding that the Court did not find credible Mr. Goins's explanation and purported reason for posting the Deadbeat List, the Court does find that both he and Mrs. Goins appeared to be genuine in their regret that they violated the automatic stay and discharge injunction.  Furthermore, they removed the list before the evidentiary hearing, and Mr. Goins testified that he does not plan to repost it again.  Morristown Tire is a family-owned business unique to the small town of Morristown, Tennessee, and is a somewhat unsophisticated creditor.

---

[9] The time records erroneously stated that Mr. John Newton billed for 5.55 hours; however, when the Court added the hours billed, Mr. Newton's total was 6.05.

In its Response to Debtors' Supplemental Brief filed on April 9, 2020 [Doc. 46], Morristown Tire states that the $275.00 hourly rate for Mr. John Newton is excessive and asks the Court to fix a reasonable hourly rate.  The Court, however, disagrees and declines to adjust Mr. Newton's hourly rate, finding that the $275.00 hourly rate is reasonable based on his experience and is comparable to fees charged for similar services in this district.

Because the Court finds no need to ensure future compliance by Morristown Tire and that its actions were remedied immediately when advised by counsel, the Court finds that punitive damages are not necessary or appropriate in this case.

## V.  ORDER

For the foregoing reasons, the Court directs the following:

1. Having found that Morristown Tire willfully violated the automatic stay and further violated the discharge injunction imposed by the Discharge Order entered on June 26, 2018 [Doc. 28], the Motion for Contempt filed by Debtors on November 25, 2019 [Doc. 38], is GRANTED.

2. As a result of Morristown Tire's willful violations of the automatic stay, pursuant to 11 U.S.C. § 362(k)(1), Debtor Misty Wallen is entitled to actual damages in the amount of $3,519.11, representing lost wages, mileage, parking, and reasonable attorneys' fees and expenses incurred for filing and prosecuting the Motion for Contempt.

3. To purge its contempt, Morristown Tire shall remit the total damages awarded in the amount of $3,519.11 to Debtor, through counsel, no later than July 15, 2020.

4. Debtors' counsel shall file a notice of compliance/noncompliance no later than July 20, 2020.

5. Failure of Morristown Tire to pay the judgment in full may result in a finding of further contempt against Morristown Tire.

6. The clerk shall serve a copy of this Memorandum and Order on Morristown Tire and Performance Center, LLC, 720 E. Morris Boulevard, Morristown, Tennessee 37813-2444.

# # #